ALICE M. HIATT, Appellant, v. TRAVELERS INSURANCE COMPANY, Appellee.

INSURANCE: Construction and Operation of Policy. The general rule
1　that a policy of insurance must be construed most favorably to the insured applies only when there is a real ambiguity in the language used. If the words used are plain and unambiguous, a court may not make a new contract by construing them otherwise than according to their usual and ordinary meaning. Accordingly, a policy insuring against accident ''by reason and in consequence of the burning of a building while the insured is therein'' cannot be construed as meaning accident resulting from the burning of the *contents* of a building, and not of the building itself.

INSURANCE: Extent of Loss and Liability of Insurer—Accident In-
2　surance. A plaintiff suing for double indemnity for the death of the insured under a policy providing for such indemnity in case of death ''by reason or in consequence of the burning of a building while the insured is therein'' must prove that the accident causing the death resulted from the burning of the building itself, and not from the burning of merely the contents of the building.

**INSURANCE:** Extent of Loss and Liability of Insurer—Accident Insurance. Under the rule that, in case of a directed verdict, the evidence should be construed most favorably towards the party against whom the verdict is directed, evidence reviewed, and held to present a jury question whether the injuries to insured, which caused his death, were occasioned by the burning of parts of the building (in which case the beneficiary would be entitled to double indemnity, under the terms of the policy in suit) or by the burning of the contents of the building, in which case the directed verdict for only the principal sum, with interest and costs, would have been proper.

*Appeal from Appanoose District Court.* —F. M. HUNTER, Judge.

FEBRUARY 5, 1924.

Action to recover a double indemnity under a policy of accident insurance, on account of the death of the insured. Defendant tendered the principal sum of $1,000, together with interest and costs. On motion of the defendant at the close of all the testimony, the court directed a verdict in favor of the defendant, and judgment was entered accordingly. Plaintiff appeals.—*Reversed.*

*Howell, Elgin & Howell,* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *H. E. Valentine,* for appellee.

DE GRAFF, J.—Plaintiff, as beneficiary, sued to recover on an accident insurance policy providing for double indemnity for the death of her husband, alleging that he received his fatal injuries by reason and in consequence of the burning of a building while he was therein. The clause of the policy relied on by the plaintiff, so far as material to the issue, reads:

"Or (3) by reason and in consequence of the burning of a building while the insured is therein, provided he was in the building at the commencement of the fire."

The defendant company by answer admitted that the policy of insurance in suit was issued; that the insured Leslie E. Hiatt died on or about the 20th day of March, 1921, by external vio-

lence and accidental means; that the policy at the time of the death of the insured was a valid and subsisting policy; that proofs of death were duly made; and that the defendant thereupon became indebted to the plaintiff and beneficiary under the terms of said policy for the sum of $1,000, which sum is tendered in discharge and satisfaction of the defendant's liability under said policy; but that said tender was refused and rejected on the ground that the defendant company was liable for the double indemnity provided in said policy, to wit, the sum of $2,000,— and renews its tender and pays to the clerk of the court for the use and benefit of the plaintiff and her attorneys the said sum of $1,000. Defendant, further answering, specifically denied that the injuries sustained by the said Leslie E. Hiatt and resulting in his death were sustained by reason and in consequence of the burning of a building.

Upon the issues thus framed, two questions are presented on this appeal: (1) Does the language of the instant policy negative the double indemnity, in that, as contended by the defendant, the contents of a building are not within the risk contemplated and as expressed in the words "by reason and in consequence of the burning of a building?" (2) Did the plaintiff offer sufficient proof that the burning of a building caused the injury and death of the insured, justifying a submission of the question to the jury?

The trial court ruled against plaintiff on both propositions, and with the correctness of the rulings we are now concerned.

On the day in question, the insured was working on an automobile in the garage of one W. W. Kinser, at Promise City, Iowa. An employee of Kinser's rolled a barrel of high-test gasoline across the cement floor, and proceeded to open it about ten feet from the insured. Whereupon the generated gas and vapor escaped, and upon reaching the 14-foot ceiling, spread out in the shape of a huge cone. In the garage, about 20 feet from the barrel, there was a stove in which a fire was burning. An explosion resulted, which set fire to the contents of the garage, and eventually burned all inflammable parts in and of the garage. Within a minute or two after the explosion, the insured made his way from the place where he was working to the door, being compelled to walk through burning automobiles to reach the

exit, a distance of about 52 feet. The garage was 36 by 60 feet, and was constructed of concrete blocks, with cement floor. It consisted of one large room. In the garage were grease cans, barrels of oil, several automobiles, and 150 casings hung on wooden arms in different places. Further recital of the facts will necessarily be made in the determination of the fact question involved in this case. The insured received burns which later caused his death.

I. Is the burning of the contents of a building the burning of a building, within the purview of the language of the policy in suit? In order to justify a recovery, must the proof show that the insured died from injuries literally caused by the burning of a building while he was therein, as distinguished from a fire in a building? On this point the case is one of first impression in this court. We are not unmindful of the rule of quite universal application that a policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity. If the language is, without violence, susceptible of two interpretations, that one which will sustain his claim and cover the loss must, in preference, be adopted over that construction which will prove fatal thereto. Such a rule, however, does not warrant an arbitrary judicial construction of the terms of the instrument, and a court is in duty bound to give effect to exceptions and limitations in a policy as they are written; and unless it may be said there is ambiguity in the words found in the policy, there is no occasion for the exercise of choice of interpretation. *Jones v. Hawkeye C. M. Assn.*, 184 Iowa 1299. In the absence of some controlling statutory rule to the contrary, a court must give effect to the language of an insurance policy according to the plain and ordinary meaning of the terms which the parties have employed. *Swanson v. Provident Ins. Co.*, 194 Iowa 7. It is not the function of a court to make a new contract of insurance by reason of supposed considerations of expediency or fairness. Some doubt or ambiguity must exist, in order to invoke a rule of construction or interpretation.

Clearly, the burning of a building is not the same as the burning of articles or contents in a building. The instant policy

*Margin note:* 1. INSURANCE: construction and operation of policy.

is not an insurance against accident caused by fire *in* a building.

2. INSURANCE: extent of loss and liability of insurer: accident insurance.

A fire may involve the burning of the contents of a building, without the burning of a building, in part or in whole. It is a simple proposition to write a contract broad enough to embrace any accidental injury occasioned by fire. The insurance is against accident, and not against fire, and the policy contemplates and provides the kind of accident covered thereby.

In *Houlihan v. Preferred Acc. Ins. Co.* (November, 1909), 196 N. Y. 337 (89 N. E. 927, 25 L. R. A. [N. S.] 1261), the policy issued insured against the effect of external violence and accidental injury "* * * (3) if caused by the burning of a building while the said person is therein." It is alleged in the complaint that the injury resulting in death was "by means of burns caused by the burning of a building while the said beneficiary was therein." The appellate division (127 App. Div. 630; 111 N. Y. Supp. 1048) reversed a judgment for defendant entered on a directed verdict, and this judgment was reversed on appeal. The majority opinion holds that the words "if caused by the burning of a building while said person is therein" unmistakably require the burning of a building, either in whole or in part, as a condition precedent to liability on the part of the insurer. It is said:

"We are not called upon to resolve a doubt in favor of the insured where there does not appear to be any reasonable doubt. * * * When the contract expressly specifies the kind of accident which it covers, the rights of the insured and the liability of the insurer are measured by the specification. * * * The burning of a building is not the same thing as the burning of articles in a building; and yet it is only by holding these terms to be absolutely equivalent in meaning that the defendant can be charged with liability in this case. * * * If it was the purpose of the parties to enter into a contract broad enough to embrace any accidental injuries occasioned by fire, it was easy enough for them to do so. We can determine their intent only by reference to the language they saw fit to use."

In *Maryland Cas. Co. v. Edgar* (C. C. A. 4th Cir., 1913), 203 Fed. 656, the policy provided for a double indemnity, payable under a clause in the event the insured "shall sustain such

injuries * * * in consequence of the burning of a building while the assured is therein." The court held that the language of the policy is entirely unambiguous, and that by its terms the burning of a building must have had a causal connection with the injury. It is said:

"If the parties here intended double indemnity for an injury received in consequence of the burning of the contents of a building, they assuredly have not so expressed their agreement, and we must interpret their perfectly unambiguous contract according to the plain, ordinary meaning of the words used by them."

We find but one case which announces a contrary holding in the interpretation of similar language, and it is the case of. original first impression,—*Wilkinson v. Aetna Life Ins. Co.* (April, 1909), 240 Ill. 205 (88 N. E. 550). The policy provided for double indemnity for injuries sustained "in consequence of the burning of a building in which the insured shall be at the commencement of the fire." The facts disclose that the insured was fond of archery, and that he made his own targets in the loft of a brick barn which stood in the rear of his house. In the loft were some wooden boxes and some boards used as a bench or table, and a small amount of straw used in the manufacture of the targets. Plaintiff's intestate went into this loft, and at that time he had a cigar in his mouth. A little later, there was an alarm of fire, and the department responded. The loft was on fire, including the straw, boxes, and boards. Wilkinson was found lying on the loft floor, unconscious, and different portions of his body were badly burned, from the effect of which he died, two days later. At the close of all the evidence, defendant made a motion for a directed verdict, which was denied. The defendant offered no proof. It appeared from the evidence that the floor and the roof of the loft were more or less burned at the time that the firemen arrived, and the inference from this evidence could fairly be drawn that the injuries which resulted in Wilkinson's death resulted in part from the burning of the building. The court, however, held (which may be considered dictum) that the word "building," as used in the policy, included the contents of said loft, and said:

"The insured in this case was contracting for indemnity

against an accident from fire while he was in a building, and not alone from the burning of a building."

This undoubtedly fortified the decision, in holding that the trial court was not in error in declining to take the case from the jury. No other case involving a similar policy of accident insurance has approved the construction in the *Wilkinson* case, but, on the contrary, say, "We are unable to so construe the language." *Maryland Cas. Co. v. Edgar*, supra.

In *Kleis v. Travelers Ins. Co.*, 118 Minn. 422 (136 N. W. 1101), the court was not called upon to choose between the New York rule, as declared in the *Houlihan* case, and the apparently contrary rule of the Illinois court in the *Wilkinson* case; and the opinion so states.

The interpretation of the double indemnity clause of the policy in the case at bar does not dispose in finality of the instant appeal, and we now direct our attention to the fact question. Was there any evidence of a substantial nature tending to prove that the insured sustained his injuries by reason of the burning of a building, sufficient to take the question of plaintiff's right to recover to the jury?

3. INSURANCE: extent of loss and liability of insurer: accident insurance.

II.   The inflammable portions of the building in question were on fire, and were burned.

"The doorway and casings around the door were all in flames, and burning. We had to crouch down to get out, and the flames from the door and casings would touch as he (Hiatt) came through. The doorway was all blazing. As he crouched through the doorway, the flames licked down and came across his body. The flames went against his body—the whole body."

There is no dispute in the evidence that the doorway was all ablaze as Hiatt made his exit from the building. Another employee in the building, named Warren, testified that Hiatt came through the burning door.

"The flames touched him around the shoulders like they did mine—he had to come through the flames as he came through the door. When he came out the door, or at the side of the 'V' place, the door was on fire, and I think that is where I got part of my burns. I was burned both by the door and as I came between the cars."

There is no direct testimony as to Hiatt's condition before he passed through the door. He was the last of the four men in the building to leave, and no one saw him or his condition before he left the building. The record does disclose that everything was afire, "even up to the front door." The garage proprietor testified that he had to walk through the burning cars to get to the door.

"I didn't know that I was burned before starting between the blazing cars. There was just room for a man to pass between the cars. Hiatt had to thread his way through the same maze of burning cars that I had. There was no other place to get out, except between the burning cars. I noticed him when he came out. His clothing was burning when he came out. Hiatt didn't start as quick as the rest of us did."

The attending physician of Hiatt testified that he did not smell any gasoline on Hiatt, but that his clothing was burned, and also his flesh, and his burns were deep. There is nothing vague or uncertain as to what portion of the building burned, or the extent of the burning. The question is, Did the burning of the building have a causal connection with the death of Hiatt, and does the evidence in this respect present a jury question? The evidence offered by the plaintiff must be regarded by the court in the most favorable light toward the party against whom the motion is directed, and the strongest inferences reasonably deducible from the most favorable evidence should be indulged in favor of the party against whom the motion is directed. *Stilwell v. Stilwell*, 186 Iowa 177. There was a substantial burning of the building. The only question is whether the plaintiff established the burden in proving that the injury causing death was in consequence of that burning.

In *Kreiss v. Aetna Life Ins. Co.*, (1920) 229 N. Y. 54 (127 N. E. 481), it was held that the defendant company was not liable under an accident policy insuring against death "by reason and in consequence of the burning of a building while the beneficiary is therein." The evidence disclosed that the clothes of the insured caught on fire while within the building, and that there had been a fire in the kitchen of such building which resulted in the burning of some of the contents of the room, the charring of wall paper, and the scorching of window frames,

and that the beneficiary had been cleaning gloves with gasoline, just prior to the fire. The appellate division affirmed the judgment of the trial court for plaintiff on the verdict, but on appeal the judgment was reversed, and a new trial granted, for the reason that the record evidence did not warrant the inference that death was caused by the burning of the building. It is said by the court that the question is a narrow one, and depends entirely upon whether or not the case discloses any evidence which would bring the plaintiff within the provisions of the policy. The opinion comments on the law of the *Houlihan* case, supra, and, after reviewing the testimony in the case before it, said that the circumstances of the burning of the insured do not meet the limits of the decision in the *Houlihan* case, and that ''there is no evidence which will support the verdict of the jury.'' In the *Kreiss* case, no one saw the beginning of the fire nor the burning of the insured. The evidence as outlined proves that the contents of the room were burned, and that some of the woodwork had been charred or blistered, and that the wood of the drain board of the sink was burned. One window sash was fairly burned. The captain of the fire department testified:

''They had no difficulty in getting in the kitchen, as there would have been had there been a fire in the doorway.''

It is said:

''There is no doubt in this case that a portion of the building was burned—the kitchen door, the wainscoting, window frames, and the sink board; and the defendant substantially concedes this. But is there any proof from which an inference may fairly be drawn, or be drawn at all, that the burning of these parts of the building caused Mrs. Kreiss to burn?''

Appellant contends that this court can adopt the foregoing statement on the record before us. Cases of this character afford but weak precedents on the facts, and each case must be decided according to its own facts. Plaintiff was not bound to include in her proof the possibility that the accident might have happened in some other way than that claimed by her, as that would impose a greater degree of proof than required in civil cases. We cannot say that plaintiff's claim has no support in the evidence. A jury could well find that a person going thr

a blazing door would be burned; and the plaintiff passed through a blazing door of the building. Appellee takes the position that this is no more probable or possible than that the insured might have been fatally burned while he was in the building, therefore putting the testimony in a state of legal equipoise. Verdicts may not be based on mere surmise or conjecture; but when a cause is shown which might produce the accident upon which the recovery is predicated, and other proximate causes are claimed to contribute to the accident, this court will inquire whether the jury, as reasonable and fair-minded men, might conclude from the proofs offered that the accident occurred in the manner alleged by the plaintiff. *George v. Iowa & S. W. R. Co.*, 183 Iowa 999. Was it for the trial court to say whether the injuries to the plaintiff were caused by the burning of the gasoline through the explosion, or the burning of the contents of the building, or by the burning of the building? Would reasonable minds differ, under the evidence of this case? Here we have a fire shown, a fire touching and enveloping the body of the insured. No one testifies that fire touched the body of decedent in any other manner, except it may be inferred from the circumstances that his clothing caught fire while passing between the cars. It may not be said that there was no causal connection between the burning of the building and the injuries causing the death of the decedent. We find testimony bearing on the question at issue, and there was room for fair-minded men to conclude from the proofs offered by plaintiff that the burning of the building was an operating agency in bringing about a result which is alleged as a basis of recovery.

In *L'Ecuyer v. Indemnity Life & Acc. Co.*, 97 Kan. 540 (155 Pac. 1088), the only question presented on appeal involved a question of fact whether the death of the insured was caused by an explosion or by the burning of a building, within the terms of the policy. The clause of the policy relied on by plaintiff reads:

"By the burning of a dwelling, hotel, office building, theater, school building, lodge room, club house, store or barn, while assured is therein."

The plaintiff was filling a five-gallon oil can, and was pumping it from a measuring tank of oil. An explosion occurred,

after which the deceased was seen getting up from the floor. Prior to the explosion, the building was not on fire. After the explosion, plaintiff ran out of the building, with his clothing on fire. The court said:

"While it does appear that the building itself was partially burned, it seems beyond question that the explosion of the can, and not the burning of the building, caused the death. Manifestly the decedent was out of the building before the fire had made any progress."

In *Farley v. Aetna Life Ins. Co.,* 200 Mo. App. 460 (207 S. W. 281), the plaintiff, an electrician, was fatally burned as a proximate result of a sudden flash at a switchboard, occasioned by a short circuit, which threw oil over him, igniting his clothing and partially burning the switchboard. It was held that plaintiff could not recover under an accident policy providing for injuries "by reason and in consequence of the burning of a building while the insured is therein." On the trial below, the court on its own motion peremptorily instructed the jury that, under the law, pleadings, and evidence, the verdict should be for the plaintiff in the sum of $3,750, which denied the double indemnity prayed for. On appeal the judgment was affirmed. Counsel for plaintiff contended that there was sufficient evidence to make a question for the jury to determine whether or not the insured received his fatal injuries by reason and in consequence of the burning of a building. The appellate court assumed, without deciding, that the switchboard is to be regarded as a part of the building, and also stated that the evidence shows that various metallic portions of the switchboard were burnt or melted by the intense heat developed by the electric current. It was not prepared to say that this constituted a burning of the building, within the intendment of the policy, but it held squarely that there was no evidence whatever to show that Farley's injuries resulted by reason or in consequence of any burning of the building, and further said:

"If any evidence were present tending to show that the electric current set fire to some combustible portion of the building, and that the flames from such burning part of the building were communicated to Farley, the case would be quite a different one."

Briefly stated, the Missouri court held that, if there had been any evidence of a substantial nature tending to prove that the insured sustained his injuries by reason of the burning of a building, then that was sufficient to make the question as to plaintiff's right to recover the double indemnity one for the jury.

In *Kleis v. Travelers Ins. Co.*, supra, the appeal was from an order denying defendant's alternative motion for judgment *non obstante* or for a new trial. The only question involved was whether the death of plaintiff's intestate resulted from one of the risks insured against, to wit, "the burning of a building while the beneficiary is therein." At the close of all the evidence, the defendant company moved the court to direct a verdict in its favor, which motion was overruled, and the case was submitted to the jury on the theory that there was but one question involved, viz., whether the decedent came to her death "by reason of bodily injuries caused by the burning of a building while she was therein." Without saving exceptions to the instructions, the case was submitted on the theory "that, in order to justify a recovery, Mrs. Kleis must have died from injuries literally caused by the burning of a building while she was therein, as distinguished from a fire in a building, the building itself not being burned, nor any part thereof; and the only question presented * * * is whether there was sufficient evidence to warrant the submission of the case to the jury upon this theory." The substantial evidence is fully quoted in the opinion, and the conclusion of the court is announced in these words:

"While it is somewhat vague and uncertain as to just what portion of the building was burned, and the extent of the burning, it is nevertheless apparent that there was a general conflagration of considerable dimensions, and we cannot say that there was no evidence of the burning of the building. Under the instructions given, the verdict implies a finding that Mrs. Kleis' death was caused by the burning of the building while she was therein, and we cannot say that there was no evidence to sustain this finding."

We do not consider this case, under the facts, as controlling the case before us. It simply holds that the correctness of the theory as submitted to the jury by unchallenged instructions will not be reviewed or disturbed on appeal.

In *Maryland Cas. Co. v. Edgar,* supra, the facts disclose that decedent went to the basement of his home to investigate certain conditions. He lighted a match, and after it had been used, he threw down the glowing stick; and when it reached the water in the cellar, there was an explosion, caused by escaping gasoline vapors. The insulation of the electric wiring was burnt off, a wooden lattice door was slightly charred, some of the joists were blackened, and paint on some of the woodwork was blistered. The insured was so badly burned that he subsequently died. It was held that decedent's burns preceded the burning of the building, and therefore the casualty company was not subject to a double indemnity. The trial court instructed the jury that the policy required, as a condition to enable the double indemnity clause to be operative, that:

"Proof shall be made that the building was in the condition of burning by this fire, * * * and if in that accident the assured received injuries, whether from the burning of the structure or from that that was within it, a condition arises that allows recovery." Further, "If the jury, therefore, finds that this fire in the building caused the structure to ignite—no matter how much was burned—so that the structure did burn, that the condition then arose under which the maximum of this policy is recoverable."

The specific objection and exception to the instruction as given is that it makes the defendant liable under the double indemnity clause of the policy if the building in which the insured was injured merely took fire in any part, without regard to the question of whether or not his injuries were caused in any degree by the burning of the building or any part thereof. The appellate court held that the objection was well taken, and said that under the evidence there was no causal connection between the burning of the building and the injury.

"In fact, the burning of the building was not even contemporaneous with the injury to Edgar, but followed it."

We conclude, under the record in the case at bar, that the evidence presents something more than a mere surmise or conjecture. It is not a case in which this court can say that the evidence is in equipoise. A fact question was presented, and it was the province of the jury to determine the cause of Hiatt's

death, in relation to the right of plaintiff to recover the double indemnity. Wherefore. the judgment of the district court is—*Reversed*.

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.