BOBCO *v.* METROPOLITAN INSURANCE COMPANY.

1. WORDS AND PHRASES—IGNITION.
   An ignition is a burning.

2. INSURANCE—ACCIDENT AND HEALTH POLICY—DOUBLE INDEMNITY—
   BURNING BUILDING.
   Provision of comprehensive personal accident and health insur-
   ance policy for double indemnity if bodily injuries are sus-
   tained "in consequence of the burning of any building in
   which the insured shall be at the commencement of the fire"
   requires a showing, not only of a burning, but that the
   building itself, as distinguished from its contents, was burn-
   ing.

3. SAME—ACCIDENT AND HEALTH POLICY—DOUBLE INDEMNITY—
   BURNING BUILDING—PAINT VAPORS EMANATING FROM WALLS.
   Paint vapors, even though they emanate from the walls of a
   building, *held,* not a part of the building in action to recover
   double indemnity under comprehensive personal accident and
   health insurance policy provision for bodily injuries sustained
   "in consequence of the burning of any building in which the
   insured shall be at the commencement of the fire", where it
   was believed that the explosion or burning of the paint vapors
   came from an extension cord or a light bulb that had been
   placed inside the water tank for illumination.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INSURANCE—WATER
   TANK—PRESENCE OF DECEASED INSIDE TANK.
   Whether or not water tank, interior of which plaintiff's deceased
   was engaged to paint, was a building and whether or not
   deceased was in it, within the meaning of double indemnity
   provision of accident and health insurance policy, when fatal

---

REFERENCES FOR POINTS IN HEADNOTES

[2. 3] 29A Am Jur, Insurance § 1285.
   Effect of provision for coverage or double indemnity in case of
   injury or death in consequence of burning of building.   55
   ALR2d 398.
[4] 3 Am Jur, Appeal and Error § 824.

injuries were sustained, are not decided, where recovery under such provision is denied because the structure, as distinguished from its contents, is determined as not having burned.

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted January 4, 1962. (Docket No. 28, Calendar No. 49,153.) Decided September 10, 1962.

Action by Mary Bobco against Metropolitan Life Insurance Company, a New York corporation, for double indemnity benefits because of death of husband occasioned by fire and explosion. Judgment for defendant. Plaintiff appeals. Affirmed.

*Jesse R. Bacalis,* for plaintiff.

*Dickinson, Wright, McKean & Cudlip (William G. Warren* and *Charles F. Clippert,* of counsel), for defendant.

ADAMS, J. This is an action on a comprehensive personal accident and health policy which was issued by defendant to Steven Bobco, plaintiff's husband. The policy contains a provision for double indemnity, if bodily injuries are sustained "in consequence of the burning of any building in which the insured shall be at the commencement of the fire."

On July 22, 1958, Steven Bobco and his employee, Mr. Martichuski, were painting the interior of a water tank in Farmdale, Ohio. The tank stood approximately 12 feet above the ground upon a steel platform. A temporary scaffolding had been placed adjacent to the platform so that the top of the scaffolding was level with the bottom of the tank. From the scaffolding, Mr. Bobco and his helper had entered the tank through a manhole. They were taking turns painting the interior of the tank.

Shortly after noon, Mr. Bobco started to enter the tank. Mr. Martichuski was standing on the scaf-

folding. Mr. Bobco had one foot inside the manhole. His head and shoulders up to his chest were inside the tank when Mr. Martichuski saw a blue flame through the manhole opening. Mr. Martichuski reached for Mr. Bobco. There was a roar. Both men were knocked off the scaffolding a distance of about 20 feet. Bobco was severely burned. He lived only 20 hours. Martichuski was burned about his wrists.

Defendant paid the face amount of the policy, but refused to pay under the double indemnity provisions, claiming that the water tank was not a building within the meaning of the policy, that Mr. Bobco's death did not result from "the burning of a building." And finally, that Mr. Bobco was not in the building within the meaning of the policy when the accident took place.

The trial judge sitting, without a jury, held that the proofs did not show death resulted "from the burning of the building," within the meaning of the policy. Judgment was entered for the defendant. From this judgment, plaintiff appeals.

Was there a burning? Martichuski saw a blue flame. After the accident, Bobco's clothes were in flames; he suffered third-degree burns over approximately 35% of the total body surface.

Plaintiff's expert witness testified that, in his opinion, a burning took place first; followed almost simultaneously by an explosion. Defendant's expert witness stated the process was the reverse. In any event, the fire and the explosion were practically simultaneous, defendant's witness stating "we are talking about which came first, the chicken or the egg." Both expert witnesses testified that whether there was an explosion or a burning, there would have had to have been an ignition first to start either process and that an ignition is a burning. It was believed the ignition came from an extension cord

or a light bulb that had been placed inside the tank for illumination.

Under the testimony of both expert witnesses, the first cause of either an explosion or a burning was an ignition, which is a burning. The inner surface of the tank was burned in part. The vapors within the tank were related to the surface in that it was the "mother" substance for the vapors.

However, the language of the policy is "If such bodily injuries are sustained (c) *in consequence of the burning of any building* in which the insured shall be at the commencement of the fire." (Emphasis supplied.)

Our inquiry cannot end once it has been determined there has been a burning. The further question arises—of what? There is nothing to show that the burning began with the walls and then was transmitted to Steven Bobco. The burning began with an arc, proceeded to an explosion or flame, or both. The flame was transmitted to plaintiff's decedent and to the building.

A number of courts have passed upon language similar to or the same as that contained in this policy.

In *Maryland Casualty Co.* v. *Edgar* (1913, CCA 4), 203 F 656, the causal connection was found to be lacking where the decedent threw a match into a cellar, causing an explosion from a layer of gasoline on top of water in the basement. Though the building was burned, recovery was denied.

In *Farley* v. *Aetna Life Insurance Co.* (1918), 200 Mo App 460 (207 SW 281), the decedent was working on a switchboard. Apparently a short circuit caused oil to be sprayed over him. His clothes were set on fire. It was held that the resultant death was not caused by the burning of a building, even though the 7' x 30' switchboard, affixed to the building, was scorched by the flash.

. In *Kreiss* v. *Aetna Life Insurance Co.* (1920), 229 NY 54 (127 NE 481), the fire apparently began with gloves saturated with gasoline which the decedent was attempting to dry over a gas fire. Recovery was denied even though the resulting fire spread to the building.

' In *L'Ecuyer* v. *Indemnity Life & Accident Co.* (1916), 97 Kan 540 (155 P 1088), the fire or explosion began from a kerosene can and then spread to the building. Again recovery was denied because there was no causal relationship between the burning of the building and the injury to the decedent.

In *Provident Life & Accident Ins. Co.* v. *Brooks* (1948, CCA 5), 170 F2d 909, the decedent smelled gas, struck a match, and suffered fatal injuries in the resulting explosion. Recovery was denied even though the wooden parts of the building were seared by flames.

In the case of *Pacific Mutual Life Insurance Co.* v. *Walt,* 198 Tenn 59 (277 SW2d 434, 55 ALR2d 392), the supreme court of Tennessee construed almost identical language to bar recovery where a 65-year-old man apparently set his bed on fire from smoking. He was found on the floor. The mattress of the bed was badly burned, the floor only slightly. It was held that this was not a burning of the building, but rather of the contents, and so not covered by the policy. See, also, *Houlihan* v. *Preferred Accident Insurance Co.,* 196 NY 337 (89 NE 927, 25 LRA NS 1261).

Plaintiff cites the case of *Wilkinson* v. *Aetna Life Insurance Company* (1909), 240 Ill 205' (88 NE 550, 25 LRA NS 1256, 130 Am St Rep 269), in which case the court construed the contract language to include, even though it did not so state, the contents of the building, saying the insured (p 213) "was contracting for indemnity against an accident from fire while he was in a building and not alone from

the burning of a building." In the *Wilkinson Case,* there was evidence to indicate that the decedent, an inveterate cigar smoker, somehow started a fire in the loose material lying on the floor in a loft of a brick barn. The fire was transmitted to the loft proper. Deceased was burned either by the burning of the contents or the burning of the building or both. Neither the facts nor the law of that case jibe with the present one.

The same is true with regard to *Aetna Life Insurance Company* v. *Smith* (1927, CCA 5), 19 F2d 140, in which case it appeared that the decedent, while working in his garage, set the whole gasoline saturated dirt floor on fire. The floor was burned to a depth of 2-1/2 inches. The deceased was obliged to run through the flames in order to escape from the garage. It was held that the flames arising from the burning floor could have been the efficient cause of death.

In the present case, the burning of Steven Bobco was not "in consequence of the burning of any building," but rather was the result of the burning of the paint vapors. Paint vapors, even though they emanate from the walls of a building, are not a part of a building.

Since this matter is disposed of upon the single point above discussed, our review is so limited, and we do not pass upon other questions such as whether or not the water tank was a building within the meaning of the policy, or whether or not Mr. Bobco was in a building, within the meaning of the policy, when the injuries were sustained.

Affirmed. Costs to appellee.

Carr, C. J., and Dethmers, Kelly, Black, Souris, and Otis M. Smith, JJ., concurred with Adams, J.

Kavanagh, J., concurred in the result.